**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| ANTHONY ADKINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 06-cv-4834 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| Kevwe Akpore, Warden, | ) | |
| Hill Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Following a bench trial in Cook County Circuit Court, Petitioner Anthony Adkins ("Petitioner" or "Adkins") was convicted of attempted murder and sentenced to 30 years in prison. Adkins is currently incarcerated at the Hill Correctional Center in Galesburg, Illinois, where Joseph Yurkovich is warden. Adkins has filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254. For the reasons stated below, Adkins' petition is denied.

I.      **Background**

The Court presumes all factual findings of the state court to be correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). The Court draws the following account of the facts of Petitioner's case from state court record, including the Illinois Appellate Court's orders in *People v. Anthony Atkins*, No. 1-04-1352 (Ill. App. Ct. 1st Dist. Dec. 8, 2005) and *People v. Anthony Adkins*, No. 1-08-1093 (Ill. App. Ct. 1st Dist. Oct 13, 2010).

Cynthia Wilson and Petitioner had a four-year relationship that ended in February 2000, and not on good terms. In April 2000, Wilson obtained an order of protection against Petitioner because he was harassing her about seeing their daughter and getting back together. The order of protection prohibited Petitioner from going to Wilson's home. Despite the order, Petitioner went to Wilson's home late at night on August 8, 2000. By the time he left early the next morning, Wilson had been stabbed twice in the heart. Wilson's injuries were severe, but she survived the attack and testified against Petitioner at his bench trial. The judge found Petitioner guilty of attempted murder and sentenced him to 30 years in prison.

The background relevant to Adkins' § 2254 petition begins years before his criminal trial, when his defense counsel referred him to Dr. Michael Fields for psychological evaluation. Dr. Fields' report described Petitioner as angry, distrusting, resentful, paranoid, impulsive, and hostile with weak emotional-coping skills. He believed that Petitioner blamed others for his problems, became hostile and aggressive when frustrated, and that his instability indicated personality and emotional disorders. Petitioner had the capacity to stand trial, Dr. Fields concluded, but his psychopathology and intense rage and paranoia "may have" interfered with his capacity to appreciate the crime he committed. Defense counsel informed the state that he may call Dr. Fields as an expert witness on the issue of insanity. The state moved to bar the doctor's testimony. Ruling on the state's motion, the court concluded that it would permit Dr. Fields to be called but the bounds of his testimony would be limited by "how the trial goes" and the relevant case law.

At trial, Wilson testified that at about 7 p.m. on August 8, 2000, Petitioner called her at work and told her that he was going to kill her. She left work at about 1 a.m. and had a coworker named Michael Jefferson follow her home as a precaution. Wilson testified that when she

entered her apartment building with Jefferson, Petitioner "pop[ped] out" of the laundry room and held a knife to Jefferson's neck. Wilson ran out of the building. Petitioner ran after her, grabbed her from behind, and began stabbing. The blade pierced her heart twice, and the surgeon testified that Wilson would have died without surgery.

Jefferson, Wilson's coworker, testified that when Wilson saw Petitioner she ran outside and Petitioner ran after her. Wilson staggered back inside five or ten seconds later and told Jefferson that Petitioner had stabbed her. Jefferson testified that Petitioner did not threaten him with a weapon. Officer Epinger testified that he spoke with Petitioner after the incident and that Petitioner said that "I was going to bust [Wilson] up and I proved my point and I hope she dies."

Assistant State's Attorney Bill Laskaris testified that on August 10, 2000, Petitioner told him that he had swung at Wilson with a piece of glass. On August 11, 2000, Laskaris took a more complete statement from Petitioner. According to that statement, Petitioner called Wilson at work and swore at her. He then went to her home to see who she was "fucking around with." Wilson was not home when Petitioner arrived, so Petitioner waited in the laundry where he could not be seen. When he saw Jefferson, he pulled out a box cutter and Wilson ran. Petitioner caught up with Wilson, grabbed her shoulder, said "you're going to disrespect my daughter for him," and then started swinging at her with the box cutter. He didn't know how many swings he took. He dropped the box cutter and walked to his grandmother's house. Petitioner signed each page of the hand-written statement and initialed several corrections.

Petitioner testified that he contacted Wilson on the morning of August 8, 2000, to notify her that he would be coming by that evening to get their daughter's social security number and birth certificate, which he needed to purchase life insurance for his daughter. Petitioner claims that Wilson agreed to the visit and said that he could come by in the evening. Petitioner then told

his version of the night's events: He left work at about 5 p.m. and stopped at a liquor store with a friend. He and his friend proceeded to drink about four bottles of liquor and had some cocaine and marijuana. At about 6:30 p.m., Petitioner called Wilson and she told him that he did not have to keep calling to say that he was coming over later. At about 10:30 p.m., "wasted and stoned, high," Petitioner took public transportation to Wilson's house. During the trip, he claims to have had chest pains and spit up a little blood. When Petitioner got to Wilson's house, he entered the building and knocked on her apartment door. Nobody answered and he stared to leave. On his way out, he saw Wilson and Jefferson entering the building. Petitioner denies brandishing a weapon, and said that Wilson called him a dope and a drunk and said some "harsh" words to him. Petitioner and Wilson then walked out into the street and, as they were walking, Wilson swung a beer bottle at him. She swung it again and hit him in the neck. She then kicked Petitioner in the groin and told him she was going to "bust" his head open with the bottle. Petitioner claims that he used a box cutter to try to knock the bottle out of Wilson's hand. Wilson kept swinging the bottle and Petitioner swung at her with the box cutter to deflect the bottle. Petitioner then "just stopped and [] walked away."

Detective Tolbert testified in rebuttal. She had interviewed Petitioner and he never told her that she went to Wilson's house to get his daughter's birth certificate, that he was intoxicated that night, that his actions were in self-defense, or that Wilson was swinging a beer bottle at him.

The court found Petitioner guilty of attempted murder. Petitioner's trial counsel was allowed to withdraw, and the court appointed new post-trial counsel. Counsel filed a motion for a new trial, which the court denied. At sentencing, the state informed the court that Petitioner had numerous non-violent convictions, including seven felony convictions. The state also informed the court that Petitioner continued to call and harass Wilson after the court told him not

to. Wilson testified at sentencing that Petitioner had sent her letters from prison and that in one letter he told her that he was going to cut her body into little pieces when he gets out. Petitioner and Petitioner's mother testified in mitigation. Petitioner's mother testified that he is not a violent person, and that his present problems must be caused by drugs. Petitioner also testified that he is not a violent person, that he had a drug habit, and admitted that what he did was wrong. But in the same breath he insisted that the victim, the police, and the Assistant State's Attorney had lied. The court sentenced Petitioner to the statutory maximum of 30 years in prison. Petitioner's post-trial counsel filed a motion to reconsider the sentence, claiming that it was excessive. The motion was denied.

On direct appeal, Petitioner argued that (1) the trial court abused its discretion in sentencing him to 30 years in prison; (2) he received ineffective assistance of post-trial counsel because his post-trial counsel did not call Dr. Fields to present mitigating evidence; and that (3) he was not properly admonished pursuant to Illinois Supreme Court Rule 605(a) because the trial court failed to inform him of his right to file a motion to reconsider his sentence. The appellate court affirmed. The Illinois Supreme Court denied his petition for leave to appeal.

On September 8, 2004, Petitioner filed for relief from judgment pursuant to the Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.* His petition, as later amended by counsel, raised the following claims: (1) denial of the right to trial by jury; (2) general ineffective assistance of counsel and ineffective assistance of counsel for failing to (a) conduct a pretrial investigation, (b) properly cross-examine David Fullerton, (c) properly examine Michael Jefferson, (d) call Michael Brown and residents of Wilson's apartment building; (e) file a post-trial motion after withdrawing as counsel, (f) object to Petitioner's sentence, and (g) obtain Petitioner's hospital records from August 9 and 10, 2000; (3) denial of due process and Sixth

Amendment right to jury at sentencing; and (4) actual innocence. On April 1, 2008, the trial court dismissed Petitioner's amended petition. Petitioner raised only one issue on appeal: trial counsel was ineffective for failing to obtain hospital records from August 9 and 10, 2000. On October 13, 2010, the appellate court affirmed. The Illinois Supreme Court denied Adkins' petition for leave to appeal.

On January 27, 2010, Petitioner filed for relief from judgment pursuant to 735 ILCS 5/2-1401. His petition claimed that his due process rights were violated when (1) State witnesses lied about whether he signed a handwritten statement on August 11, 2000; (2) Officer Percy Williams testified falsely at trial; (3) Officer Epinger testified falsely at trial; (4) Officer Percy Williams and Rodney Wilson testified falsely at trial about the *69 telephone function; and that (5) post-conviction counsel was ineffective for failing to raise claims (1) through (4). On January 24, 2011, the trial court granted the State's motion to dismiss. Petitioner appealed, and appellate court affirmed. The Illinois Supreme Court denied the petition for leave to appeal.

Adkins signed a § 2254 petition for a writ of habeas corpus on August 31, 2006. The Court received the petition on September 6, 2006. In the petition, Adkins stated that some of his claims were the subject of ongoing state postconviction proceedings. Judge Anderson (to whom this case was previously assigned) stayed the federal case at Adkins' request pending the conclusion of the state proceedings. Those proceedings came to an end in January 2011, when the Illinois Supreme Court denied Adkins' petition for leave to appeal. On March 28, 2011, Adkins filed an amended § 2254 petition, which the Court construed as a motion for leave to file an amended petition.

Comparing Adkins' original petition and his amended petition, it appeared to the Court that all (or at least most) of the claims in the amended petition were distinct from those in the

original petition. Usually an amended pleading that neither references nor adopts the original pleading supersedes the original complaint. See *Kelley v. Crossfield Catalysts*, 135 F3.d 1202, 1204-05 (7th Cir. 1998). But the Court concluded that it was unlikely that Petitioner, who is litigating *pro se*, intended to abandon the claims in the original petition. Without objection from Respondent, the Court therefore construed Adkins' "amended" petition as supplement to his original petition. In the petition and supplement Petitioner makes the following claims (which the Court has organized and renumbered with Respondent's assistance and without objection from Petitioner):

I.  General ineffective assistance of counsel, plus ineffective assistance of counsel based on counsel's alleged failure to do the following:

    A.  Present Dr. Fields testimony at sentencing

    B.  Obtain hospital records from August 9 and 10, 2000

    C.  Investigate the crime scene, interview witnesses, and investigate Petitioner's relationship with Wilson

    D.  Properly Cross-examine David Fullerton

    E.  Properly examine Michael Jefferson

    F.  Call Michael Brown and residents of Wilson's apartment building

    G.  File a post-trial motion after withdrawing as counsel

    H.  Object to Petitioner's sentence that exceeded the statutory minimum

II.  Denial of a the right to a jury trial

III.  Denial of due process and jury trial right at sentencing

IV.  Denial of due process based on the prosecution's reliance on false testimony about whether Petitioner signed a handwritten statement on August 11, 2000

V.    Denial of due process based on the prosecution's reliance on Officer Williams' and Rodney Wilson's false testimony regarding *69 telephone function

VI.   Denial of due process based on the prosecution's reliance on Officer Epinger's false testimony

VII.  Denial of due process based on the prosecution's reliance on Officer Williams' false testimony regarding Petitioner's statements to law enforcement officials

VIII. Ineffective assistance of postconviction counsel

IX.   The trial court abused its discretion by imposing a 30-year sentence

X.    The trial court violated Illinois Supreme Court Rule 605(A) by failing to properly admonish petitioner of his right to file a motion to reconsider his sentence

On May 17, 2013, Petitioner flied a document titled "successive habeas petition," discussing the significance of the Supreme Court's decision *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). The Court reviewed Petitioner's submission and considered it in deciding his § 2254 petition.

## II.    Legal Standards

### A.    The Exhaustion Doctrine

Prior to filing a habeas petition in federal court, a petitioner seeking relief from state custody must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also 28 USCS § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This exhaustion requirement "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*,

390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). It requires the petitioner to assert each of his or her federal claims through one complete round of state-court review, either on direct appeal of his or her conviction or in post-conviction proceedings, before proceeding to federal court. See *O'Sullivan,* 526 U.S. at 845; see also *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This includes presentation of the claims to appellate courts where review is discretionary and such review is part of the ordinary appellate procedure in the State. *O'Sullivan*, 526 U.S. at 847 (requiring a petitioner to present his claims to the Illinois Supreme Court in a petition for leave to file an appeal even though that Court's review was discretionary).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and must also alert the state court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). If the federal court reviewing the habeas petition is not satisfied that the petitioner gave the state courts "a meaningful opportunity to pass upon the substance of the claims [] presented in federal court," the Court cannot reach the merits. *Chambers*, 264 F.3d at 737-38; see also *Sweeney*, 361 F.3d at 332.

"Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim(s) to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(d)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim(s)." *Perruquet*, 390 F.3d at 514 (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989);

*Rose v. Lundy*, 455 U.S. 509, 522 (1982)); see also 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). However, where a petitioner already has pursued state court remedies and there is no longer any state corrective process available to him or her, "it is not the exhaustion doctrine that stands in the path of habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default." *Perruquet*, 390 F.3d at 514.

### B.    Procedural Default

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, ordinarily precludes a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Id.*; see also *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 & n. 9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review" – and the opportunity to raise that claim in state court has passed – the petitioner has procedurally defaulted that claim. *Lewis*, 390 F.3d at 1026. Similarly, procedural default on independent and adequate state grounds occurs where the state court explicitly invoked a state procedural bar rule as a separate basis for its decision to deny the petitioner relief, even if a state court reaches the merits of the petitioner's challenge to his or her conviction in an alternative holding. See *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) ("When the last state court to issue an

opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed.").

## C.    Overcoming Procedural Default

A petitioner whose federal habeas claim is procedurally defaulted may obtain relief only by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Under the "cause and prejudice" test, "cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F.2d at 1026 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Prejudice is established by showing that the violation of the petitioner's federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); see also *Lemons v. O'Sullivan*, 54 F.3d 357, 362 (7th Cir. 1995).  A federal court may grant relief, even in the absence of cause, in extraordinary cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 466 U.S. at 496.  Under the "miscarriage of justice" test, the petitioner must show that "no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026 (citing *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

## D.    Federal Habeas Relief for State Prisoners

If the district court finds that a petitioner was in custody when he filed his appeal, that he exhausted his remedies at the state level, and that his claim was not procedurally defaulted, the court then considers the merits of the petition. A petitioner can challenge a state proceeding by showing that it was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it was "based on an unreasonable determination of the facts." 28 U.S.C. §2254(d)(1-2) (2000) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)).

A state proceeding is "contrary to" clearly established federal law "if [it] arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state [proceeding] confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state proceeding constitutes an "unreasonable application" of clearly established federal law if the state proceeding identified the correct legal rule but unreasonably applied the controlling law to the facts of the case. *Williams*, 529 U.S. at 407. Notably, "an unreasonable application of federal law is different from an *incorrect* application of federal law," (*id.* at 410 (emphasis in original)); an "unreasonable" application requires that a state proceeding rest "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

III.    **Analysis**

## A.    Claims Not Alleging Violations of Federal Law

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Id.* at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *Perruquet*, 390 F.3d at 511; see also 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

Claims VIII, IX, and X do not allege violations of federal law. Claim VIII alleges ineffective assistance of state postconviction counsel. As an independent claim, it is not cognizable. 28 U.S.C. 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Moreover, "[i]neffective assistance of postconviction counsel is not itself a cognizable federal constitutional violation and may not serve as cause for procedural default." *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996). The "narrow exception" to that rule does not apply in this case. See *Martinez*, 132 S. Ct. at 1317 (ineffective assistance of counsel in initial-review collateral proceedings may establish cause for a procedural default when "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial"); *Moore v. Hardy*, 2013 WL 1816253 (N.D. Ill. Apr. 29, 2013) (explaining that the *Martinez* exception does apply in Illinois because in this state

"defendants may raise ineffective assistance of trial counsel claims on direct appeal") (citing cases).

Claim IX alleges that the trial court *abused its discretion* by sentencing Petitioner to the maximum prison term of 30 years. "[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards." *Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001). In this case, Petitioner does not argue that his sentence is "grossly disproportionate" in violation of the Eighth Amendment. See *Henry v. Page*, 223 F.3d 471, 482 (7th Cir. 2000). And Petitioner did not make such an argument in state court. In state court, Petitioner argued that the trial judge did not adequately consider his rehabilitative potential in sentencing him to the statutory maximum. That was a question of Illinois law. And applying Illinois law, the Illinois Appellate Court concluded that "the trial court was not required to give greater weight to the defendant's rehabilitative potential than to the seriousness of the offense" and "the court was free to decide that the defendant's drug and alcohol use was not a mitigating factor as defendant contends but was, instead, an aggravating factor."

Claim X alleges that the trial court violated Illinois Supreme Court Rule 605(a) by failing to admonish Petitioner that he had a right to file a motion to reconsider his sentence. But such an admonition is not required by federal law. Moreover, for what it's worth, Petitioner's post-trial counsel *did* file a motion to reconsider. That claim, like claims VIII and IX, is not cognizable on federal habeas review.

### B.    Procedural Default

#### 1.    Claims II, III, VII, and I.C through I.H

Claim II is for denial of a right to a jury trial, claim III is for denial of due process at sentencing, claim VII is for denial of due process based on the prosecution's reliance on Officer Williams' false testimony about Petitioner's statements to law enforcement officials, and claims I.C though I.H are for ineffective assistance of counsel. The state courts were not given "one full opportunity" to address these claims and therefore they are procedurally defaulted. *O'Sulivan*, 526 U.S. at 845, 847 ("one full opportunity" includes petition for leave to appeal to the Illinois Supreme Court).

On direct appeal, Adkins petitioned the Illinois Supreme Court to consider whether (1) the trial court abused its discretion in sentencing him to maximum term of 30 years in prison; (2) he received ineffective assistance of post-trial counsel because his post-trial counsel did not call Dr. Fields to present mitigating evidence; and that (3) he was not properly admonished pursuant to Illinois Supreme Court Rule 605(a) because the trial court failed to inform him of his right to file a motion to reconsider his sentence. In his first postconviction petition, Adkins' petition for leave to appeal to the Illinois Supreme Court raised only one issue: whether trial counsel was ineffective for failing to obtain hospital records from August 9 and 10, 2000. In his 2-1401 petition, Adkins asked the Illinois Supreme Court to consider whether (1) his 2-1401 petition was timely; (2) newly discovered medical records undermined the prosecution's case; (3) he received ineffective assistance of counsel; (4) Officer Epinger testified falsely; and (5) whether Rodney Wilson and Officer Williams testified falsely about how they discovered Petitioner's address using the *69 function.

Claims II, III, and VII are missing from that list. In appealing the denial of his 2-1401 petition, Petitioner did make a general claim of ineffective assistance of counsel, but he did not raise the particular issues mentioned in I.C through I.H. That is, he did not claim ineffective

assistance of counsel for failure to (I.C) investigate the crime scene, interview witnesses, and investigate Petitioner's relationship with Wilson; (I.D) properly Cross-examine David Fullerton; (I.E) properly examine Michael Jefferson; (I.F) call Michael Brown and residents of Wilson's apartment building; (I.G) file a post-trial motion after withdrawing as counsel; and (I.H) object to Petitioner's sentence that exceeded the statutory minimum. A general claim of ineffective assistance of counsel did not adequately present these particular claims to the state courts. "Adequate presentation of a claim requires a petitioner to 'present both the operative facts and the legal principles that control each claim to the state judiciary.'" *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (quoting *Rittenhouse v. Battles*, 263 F.3d 689, 695 (7th Cir. 2001)). "Thus, the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Id.*

Petitioner does not allege, and the Court does not independently find, that there is "cause and prejudice" for the default or that "a fundamental miscarriage of justice" would result from these defaults. See *Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010) ("An equitable exception exists [to procedural default] if the petitioner can establish cause and prejudice for the default, or establish that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice.").

### 2. Claims IV, V, and VI

Claims IV, V, and VI allege due process violations caused by the prosecution's reliance on false testimony. Petitioner did not present these claims to the Illinois Supreme Court on direct appeal or in his Post-Conviction Hearing Act petition, and did so for the first time in his § 2-1401 petition. Section 2-1401 is part of Illinois Code of Civil Procedure but it nevertheless

allows defendants in a criminal case "to correct all *errors of fact* occurring in the prosecution of a cause, *unknown to the petitioner and court at the time judgment was entered*, which, if then known, would have prevented its rendition." *People v. Haynes*, 737 N.E.2d 169, 182-83 (Ill. 2000) (emphasis added).[1]

Despite the fact that § 2-1401 may be used to challenge a criminal conviction, Respondent argues that a § 2-1401 petition does not count as "one complete round of state court review" for the purposes of federal habeas, *Lewis*, 390 F.3d at 1025, because section "2-1401 addresses only factual issues — not legal or constitutional ones," *United States ex. rel. DeFrancisco v. Sigler*, 2010 WL 1031834, at *8 (N.D. Ill. Mar. 17, 2010). Consequently, 2-1401 petitions "are not relevant to the federal court's exhaustion and procedural default analyses." *Id;* see also *United States ex rel. Giampaolo v. Anglin*, 2008 WL 4133383, at *3 (N.D. Ill. Aug. 20, 2008) (same); *Tucker v. Atchinson*, 2012 WL 686715, at *12-*13 (S.D. Ill. Mar. 2, 2012) (concluding that claims presented to the Illinois Supreme Court in a petition under section 2-1401 but not on direct appeal or in ordinary post-conviction proceedings were procedurally defaulted because they were not asserted through one complete round of state-court review).

The Court agrees with Respondent that claims IV, V, and VI are procedurally defaulted Petitioner's due process claims could not be fairly addressed by the Illinois Supreme Court as questions of factual error. See *Napue v. Illinois,* 360 U.S. 264, 269 (1959); *U. S. ex rel. Burnett v. People of State of Ill.,* 619 F.2d 668, 674 (7th Cir. 1980); *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1387 (7th Cir. 1994); *Whitlock v. Brueggemann*, 682 F.3d 567, 581 (7th

---

[1] The state trial court asked Adkins whether, despite its label, he wanted his § 2-1401 petition to be considered as a successive postconviction petition, and not under § 2-1401. As best the Court can tell, he opted to stick with § 2-1401. Adkins has not second-guessed that decision, on appeal in state court or in this Court.

Cir. 2012). Constitutional claims are outside the scope of § 2-1401 review, and so to the extent that Petitioner was raising constitutional claims, it is likely that they would have been barred by res judicata — as claims that could have been raised on direct appeal or in his postconviction petition. See, e.g., *Donatelli v. Anglin*, 2011 WL 10481796, at *4 (Ill. App. Ct. Mar. 10, 2011) ("Issues which could have been raised in a motion for rehearing or on direct appeal are res judicata and may not be relitigated in [a] section 2–1401 proceeding.") (internal citations omitted); *People v. Blair*, 831 N.E.2d 604, 614 (Ill. 2005) ("the legislature intended that trial courts may summarily dismiss postconviction petitions based on both *res judicata* and waiver"). Thus two state-grounds for dismissing Petitioner's § 2-1401 claims are already evident: federal constitutional claims are inappropriate for a § 2-1401 petition and even if such claims could be entertained, they would be barred by res judicata and waiver.

Even setting those concerns aside, claims IV, V, and VI still would be procedurally defaulted because Petitioner's § 2-1401 petition was untimely. See *Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009) (if "on the face of the order it is unclear on what basis the state court disposed of a claim, we must make a determination on the record that the state court was presented with"). In the trial court, the state's lead argument in opposition to Adkins' 2-1401 petition was that it was untimely. A § 2-1401 petition must be filed within two years after the entry of judgment. 735 ILCS 5/2-1401(c); *People v. Caballero*, 688 N.E.2d 658, 660 (Ill. 1997) ("where a section 2-1401 petition is filed beyond two years after the judgment was entered, it cannot be considered"). Petitioner was sentenced on April 9, 2004. Petitioner did not file his § 2-1401 petition until 2010. As the state argued before the trial court, "[Adkins' petition was] three years and nine months too late." After considering the state's position and Adkins' response, the trial court summarily granted the state's motion to dismiss. Adkins appealed. The

state appellate defender moved to withdraw after reviewing the record and concluding "that an appeal in this cause would be without arguable merit." See *Pennsylvania v. Finely*, 481 U.S. 551 (1987). The lead argument in counsel's supporting memorandum was that Adkins' 2-1401 motion was untimely and that there was no reason to toll the limitations period. Specifically, counsel pointed out that the limitations period is not tolled during a direct appeal, *Caballero*, 688 N.E.2d at 661 ("a post-judgment motion or an appeal may be pending does not serve to toll the period of limitation"), and that "Adkins does not allege that he was acting under legal disability or duress, or that the basis of his petition was fraudulently concealed from him," and so cannot extend the statutory deadline on that basis. The Illinois Appellate Court found "no issues of arguable merit," granted counsel's motion to withdraw, and summarily affirmed the trial court. Adkins' petition for leave to appeal to the Illinois Supreme Court was denied without comment.

The period of limitations was an independent state-law basis for dismissing Adkins' § 2-1401 petition. And "[f]ailure to comply with state procedural rules, such as the statute of limitation involved in this case, provides an adequate basis for barring federal habeas relief [so long as] 'the state court acts in a consistent and principled way. A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state is discriminating against the federal rights asserted.'" *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992) (quoting *Prihoda v. McCaughtry,* 910 F.2d 1379, 1383 (7th Cir.1990). There was nothing unexpected or freakish about the state-court's dismissal of Adkins' § 2-1401 petition filed more than five years after Adkins was sentenced and more than three years after the statute of limitations had run.

Petitioner cannot show cause and prejudice or a fundamental miscarriage of justice because of his default. *Promotor*, 628 F.3d at 885. Petitioner blames his default on ineffective

assistance of postconviction counsel.  See [29 at 3].  But a claim of ineffective assistance of counsel in state collateral proceedings cannot supply the necessary "cause" to excuse default. *Coleman*, 501 U.S. at 757 ("Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas.").  There is a narrow exception to that rule — when postconviction counsel has the first occasion to raise a claim of ineffective assistance of trial-counsel, *Martinez*, 132 S. Ct. at 1315 — but, as mentioned above, it does not apply in this case.

Finally, it is worth nothing that Petitioner's claims also fail on the merits.  In claim IV Petitioner contends that a document titled "Moving of Arrestee Out of & Into Arrest/Detention Facility" shows that "no interview was had on August 11, 2000, and no statement could have been signed on August 11, 2000."  But Petitioner testified at trial that he signed a statement on August 11, 2000, because he "was ready to leave there."[2]  In light of his testimony, it was not unreasonable for the Illinois Appellate Court to conclude that Petitioner signed the incriminating statement.  In Claim V, Petitioner argues that his rights were violated because of the state's reliance on testimony about a non-existent *69 feature.  Specifically, Petitioner believes that his rights were violated because witnesses testified that they found his address by using *69, which Petitioner claims is (or was) impossible.  Maybe Petitioner is right about the limits of *69, but whether he is right is irrelevant; the witnesses' testimony was not that *69 alone allowed the witnesses to find his address.  The testimony was that *69 was used to obtain Petitioner's number and that a *different service* was used to find his address.  Claim VI accuses Officer Epinger of falsely testifying that Petitioner said "I told [Wilson] I was going to bust her up and I proved my point and I hope she dies."  Here it is Petitioner's word against Officer Epinger's.

---

[2] See also [42, ex. H at 673-76]:
> Q: Do you remember signing a handwritten statement in the police district on August 11th?
> A: Yes, I did.  When I came from the hospital, yes, I remember signing it.

Petitioner does not offer any support for his claim or, much less, any non-frivolous reason that the state should have *known* that that Officer Epinger was lying. See *Del Vecchio*, 31 F.3d at 1387 ("[i]t is the knowing and intentional use of [false] testimony by the prosecuting authorities that is a denial of due process of law").

### C.      Claims I.A and I.B: Ineffective Assistance of Trial Counsel

*Strickland* governs the Court's inquiry into ineffective assistance of counsel claims. Under *Strickland*, a claimant must prove (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694; see also *Ward v. Jenkins*, 613 F.3d 692, 699 (7th Cir. 2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. On federal habeas review, "the question is whether the state court's determination that such a probability does not exist is reasonable." *Ellison v. Acevedo*, 593 F.3d 625, 633 (7th Cir. 2010); see also *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997) ("only a clear error in applying *Strickland*'s standard would support a writ of habeas corpus"). The bar is extremely high: "as long as we are satisfied that the [state court] took the constitutional standard seriously and produced an answer within the range of defensible positions," the writ of habeas should be denied. *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006).

Setting aside procedurally defaulted claims, Petitioner contends that trial counsel constitutionally ineffective because he (1) failed to present the testimony of Dr. Fields at

sentencing (claim I.A) and (2) failed to obtain records of his hospital admissions on August 9 and 10, 2000 (claim I.B).

### 1. Dr. Fields

At sentencing, counsel acknowledged Petitioner's long criminal history, but emphasized that his previous crimes were not violent — they were for drug possession, theft, and forgery. The stabbing was, as he put it, an "aberration." Petitioner's mother testified that he "is not a violent person. He is a caring person. And this what happened I don't know because I wasn't there. But I believe that the drugs or whatever had a lot to do with it. Because in my opinion he's not a person that would harm anybody in that way. Because when I heard it I was shocked myself. I was deeply shocked. And I hate it happened." Petitioner added that "I never tried to hurt her. * * * What I did was wrong. It was an accident. * * * I ain't never tried to hurt that woman. I ain't never tried to hurt no one in my life."

Petitioner argues that Dr. Fields would have provided additional mitigating evidence and so should have been called to testify at the sentencing. The Illinois Appellate Court considered this claim and concluded that Petitioner was not prejudiced by the decision not to have Dr. Fields testify because Dr. Fields' testimony "could be viewed as aggravating."

The state court's conclusion was reasonable. See *Cullen v. Pinholster*, 131 S. Ct. 1388, 1410 (2011) (evidence of mental illness is not clearly mitigating because it may show that an individual is beyond rehabilitation). According to Dr. Fields' report, Petitioner had "problems understanding social events and how they evolve and develop," which Dr. Fields found unsurprising, given his "rather antisocial history." Dr. Fields observed that Petitioner had a wide discrepancy between his verbal IQ (low) and performance IQ (higher) and that this pattern is

"often seen in much more action-oriented and impulsive individuals who have the capacity to

size up situations quickly, but who may lack the social judgment to respond in a more prudent

and thoughtful manner." As for his emotional functioning, Dr. Fields wrote that

> Test results in general reveal an angry, resentful, impulsive, hostile individual
> whose emotional resources and coping skills are very weak. Mr. Akins [sic] is the
> type of individual who tends to externalize blame for problems on others. While
> in less than stressful situations he may be a bit more accommodating, when
> frustrated he is apt to be rather hostile and aggressive.

In summary:

> Mr. Akins [sic] severe psychopathology may have interfered notably with his
> capacity to appreciate the nature of the crime that he is purported to have
> committed against Cynthia Wilson. During the interview with Mr. Akins he
> reports "blacking out", during the alleged commission of the crime, claiming that
> he had no intent of harming Ms. Wilson. He reported to the examiner that he
> really had no idea how Ms. Wilson got cut so badly, because he felt he was
> simply defending himself against her attack on him with a beer bottle. Mr. Akins'
> [sic] intense rage and paranoia may have been factors which inhibited his capacity
> to appreciate that he was committing a crime against Ms. Wilson by attacking her
> with a box cutter.

It was not unreasonable for counsel to conclude that it would not have helped Petitioner to

present testimony about his "weak coping skills," tendency to "externalize blame for problems

on others" and to be "hostile and aggressive" when frustrated. Moreover, as the Illinois

Appellate Court accurately noted, Petitioner's statement to Dr. Fields that he blacked out during

the attack was at odds with his trial testimony that he was acting in self-defense — fending off

Wilson's attack with a beer bottle.

The state court further concluded that even if Dr. Fields' testimony were considered

mitigating, the aggravating evidence supporting Petitioner's sentence was overwhelming:

> A protection order was issued against defendant prohibiting him from going to the
> victim's home. Defendant acted in clear violation of this order when he hid inside
> the victim's home on the night in question. When the victim entered her home,
> defendant pursued her as she fled. Upon catching the victim, defendant brutally
> stabbed her. The victim's heart was pierced twice, requiring surgery for her

survival. The victim had to visit a cardiologist for five months thereafter due to the brutality of defendant's attack. After defendant was arrested, he continued to harass the victim with letters and phone calls even when the court told him to stop. In one letter, defendant told the victim that when he gets out of jail he is going to cut her up into little pieces.

*People v. Atkins*, No. 1-04-1352, at *14 (Ill. Ct. App., Dec. 8, 2005). The state court's assessment is supported by the record. Add Petitioner's criminal history, and there can be little doubt that Dr. Fields' testimony would not have made a difference. At minimum, the state court's conclusion was not unreasonable.

In sum: Counsel was not deficient for deciding not to call a witness to present evidence that could easily be construed as aggravating, not mitigating. And it was not unreasonable for the state court to conclude that Petitioner was not prejudiced by his lawyer's decision not to call Dr. Fields. Petitioner's claim does not warrant habeas relief.

## 2. Hospital Records

Petitioner argues that counsel was constitutionally deficient for failing to discover hospital records filed under the name "Atkins," a misspelling of his name. Those hospital records indicate that Petitioner had been given some medication on August 10, 2000, possibly Tylenol 3, which contains codeine. On August 11, 2000, Petitioner signed an incriminating statement, which purported to have been given while Petitioner was "not under the influence of drugs or alcohol." If counsel would have located the hospital records, Petitioner's argument goes, then he could have had the statement suppressed as involuntary. And without Petitioner's incriminating statement, his case might have turned out differently.

Notably, counsel *did* attempt to locate Petitioner's medical records under Petitioner's actual name "Adkins" and under the variant "Akins." What counsel did not do is seek the

records under the misspelling that the hospital used, "Atkins." In reviewing Adkins' postconviction petition, the Illinois Appellate Court concluded that even assuming that it was an error for counsel not to subpoena records under the misspelling "Atkins," Petitioner failed to show prejudice. First, the court noted that the hospital records do not show that he was under the influence of a narcotic at the time he gave his statement. The records state that he received Tylenol 3 at 10:00 a.m. on August 9, 2000, and that he was medicated again at "12:52" on August 10, 2000. The type of medication that he received on August 10 was not documented. The next day he gave a statement. At the suppression hearing, Petitioner did not argue that his statement was involuntary because of drugs that he took while at the hospital.

The state court concluded that Petitioner could not establish prejudice for a more basic reason: the evidence against Petitioner was overwhelming and it was not likely that the result in the case would have been different even if trial counsel would have successfully argued that the August 11 statement was involuntary. The evidence against Petitioner has been reviewed several times by now, but suffice it to say that Petitioner's *other* statements paired with testimony from the victim, the victim's son, and the surgeon diminished the significance of the August 11, 2000, statement. Thus, even if the statement had been suppressed, it is nearly inconceivable that there would have been a different outcome at trial. See *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010) ("When the ineffective assistance claim is based on counsel's failure to file a motion to suppress, as it is here, the defendant must also prove 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'") (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)); *Gilbert v. Merchant*, 488 F.3d 780, 790-91 (7th Cir. 2007) (petition based counsel's failure to suppress a confession must show that the motion to

suppress would have been successful and that the outcome at trial would have been different). The state court's determination that Petitioner cannot satisfy the prejudice element of *Strickland* did not result in a decision that was "contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Petitioner's claim does not warrant habeas relief.

### D.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner Adkins a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller–El v. Cockrell,* 537 U.S. 322, 335 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller–El,* 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.,* 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). And in cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  See *Slack,* 529 U.S. at 485.

For all of the reasons stated in detail above, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, nor would reasonable jurists differ on the Court's assessment of Petitioner's claims.  Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## IV.    Conclusion

For the reasons stated above, Adkins' habeas corpus petition [1, 29] is respectfully denied.

Dated: May 24, 2013
                                               _____
                                                  Robert M. Dow, Jr.
                                                  United States District Judge